# IN THE UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| MAI HAMRIC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | NO. 3:18-cv-01239 |
| ) | |
| CITY OF MURFREESBORO, ) | JUDGE CAMPBELL |
| ) | MAGISTRATE JUDGE FRENSLEY |
| Defendant. ) | |

## MEMORANDUM

Pending before the Court is Defendant's Motion for Summary Judgment. (Doc. No. 21). Plaintiff filed a Response in Opposition (Doc. No. 26), and Defendant filed a Reply (Doc. No. 30). Defendant filed a Notice of Supplemental Authority in Support of its Motion for Summary Judgment (Doc. No. 33) and Plaintiff filed a Response (Doc. No. 34). For the reasons discussed below, Defendant's Motion for Summary Judgment (Doc. No. 21) will be **GRANTED**.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Defendant City of Murfreesboro ("the City") hired Plaintiff Mai Hamric ("Hamric") as a Cultural Arts Program Specialist in its Parks & Recreation Department in August of 2015. (Doc. No. 29 ¶ 1). Hamric's job duties as a Cultural Arts Program Specialist included teaching children's art classes, adult artist development courses, working on the City's Art Crawl event, and assisting with an arts laureate program and an arts-related publication. (Doc. No. 29 ¶ 6). The position was part-time with no health insurance or any other benefits, but subjected Hamric to a pre-hire drug test, for cause testing, random testing, and testing for promotions into safety-sensitive positions. (Doc. No. 29 ¶¶ 3, 5). Hamric's direct supervisor was Pam Taylor (formerly Pam Williams) (hereinafter referred to as "Taylor"), the Cultural Arts Program Coordinator. (Doc. No. 29 ¶ 2).

Hamric was diagnosed in July of 2011 as suffering from a bipolar disorder. (Doc. No. 29 ¶ 8). Hamric did not disclose her bipolar disorder at the time she was hired by the City and was not suffering from any symptoms of her bipolar disorder at that time. (Doc. No. 29 ¶ 9). However, during her employment for the City, Hamric disclosed to Taylor that she suffered from a bipolar disorder and anxiety. (Doc. No. 29 ¶¶ 10-11; Doc. No. 31 ¶ 3). Taylor and Hamric talked about using cannabidiol ("CBD"), and Taylor told Hamric that she used CBD to treat her anxiety, chronic fatigue syndrome, and fibromyalgia symptoms with some success. (Doc. No. 29 ¶ 13).

During Hamric's employment for the City, neither Hamric nor Taylor told anyone in the City's HR department about Hamric's bipolar diagnosis or anxiety. (Doc. No. 29 ¶¶ 12, 58-59). Taylor's supervisor, Nate Williams, observed that Hamric became nervous and was "a little bit shaky" when speaking before the Parks and Recreation Commission, but he did not inform the City's HR department about his observations. (Doc. No. 29 ¶ 60).

In about March 2018, Taylor recommended Hamric for a promotion to the full-time position of Assistant Cultural Arts Coordinator. (Doc. No. 29 ¶ 17). The City classified the Assistant Cultural Arts Coordinator position as safety sensitive, and therefore Hamric's promotion was contingent upon successfully passing a drug test. (Doc. No. 29 ¶ 18).

Around March 19, 2018, Hamric began taking CBD in capsule form to treat her anxiety. (Doc. No. 29 ¶¶ 14, 47). Hamric did not have any medical statement recommending the usage of CBD to treat her medical conditions. (Doc. No. 29 ¶ 23). At the time Hamric began taking CBD, she knew she would be required to pass a drug screen to receive the promotion to the Assistant Cultural Arts Coordinator position. (Doc. No. 29 ¶ 19). Hamric discussed her CBD usage and upcoming drug screen with Taylor and told Taylor that she had researched CBD usage and the risks of a positive drug screen and thought she would be fine. (Doc. No. 29 ¶ 20).

On April 9, 2018, Hamric submitted her sample for the drug test for her promotion. (Doc. No. 29 ¶ 24). On April 17, 2018, the City's HR Director, Pamela Russell ("Russell"), advised Hamric that the verified result of her test indicated that she had tested positive for marijuana. (Doc. No. 29 ¶ 31). Hamric told Russell that the only thing she thought that could have caused the positive test was her CBD usage. (Doc. No. 29 ¶ 32). Russell advised Hamric that she could discuss the results with the Medical Review Officer, Dr. Kracht, and could have her sample retested to see if the results changed, and if they did, the City would accept that result. (Doc. No. 29 ¶ 34). Prior to her April 17, 2018 meeting with Russell, Hamric had never told Russell or anyone else in the City's HR department that she was taking CBD. (Doc. No. 29 ¶ 33).

Later that same day, April 17, 2018, Hamric spoke to a representative of the Medical Review Officer regarding the test results. (Doc. No. 29 ¶ 35). During that interview, Hamric denied that she was taking marinol or dronabinol, two prescription drugs that can cause an initial positive result for marijuana to be changed to negative after review by a Medical Review Officer. (Doc. No. 29 ¶ 35). The Medical Review Officer, Dr. Kracht, subsequently issued an amended Specimen Result Certificate verifying that the result of Hamric's drug test was again positive. (Doc. No. 29 ¶ 36). Hamric then elected to have her sample submitted for a second drug screen by a different lab. (Doc. No. 29 ¶ 39).

On May 7, 2018, Dr. Kracht verified the reanalysis of Hamric's sample as positive for marijuana. (Doc. No. 29 ¶ 50). After receiving the results of the reanalysis, Russell explained to Hamric that, based on the second positive test result, she would recommend her termination to the City Manager. (Doc. No. 29 ¶ 51). Russell also explained to Hamric that Hamric had the option to resign or wait and see what the City Manager would do concerning her termination. (Doc. No. 29 ¶ 52). Russell also advised Hamric that other City employees had been terminated for a failed drug

screen. (Doc. No. 29 ¶ 53). On May 7, 2018, Hamric e-mailed her resignation letter to Russell. (Doc. No. 29 ¶ 56). Hamric's resignation letter stated in part:

> Along with my resignation I would like to recommend that the city revise its drug policy to address the issue of CBD use. If you can not accommodate for the use of CBD or the possibility of a failed drug screen as a result of its use, your employees need to be made aware that they can face termination or resignation for using a legal, over-the-counter vitamin supplement. This has been a terrible and unfortunate situation for myself, my family, and the people I worked with. So I would like to know that the city is going to take some steps to ensure that this does not happen again to other employees.

(Doc. No. 21-1). On October 4, 2018, Hamric filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") claiming that she was discriminated against on the basis of her disability in violation of the Americans with Disabilities Act. (Doc. No. 29 ¶ 64).

Hamric filed the present action against the City on January 8, 2019, alleging violations of Tennessee common law, the Tennessee Disability Act ("TDA"), Tenn. Code Ann. § 8–50–103, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.* (Doc. No. 1). On October 4, 2019, the City moved for summary judgment on all claims. (Doc. No. 21).

## II. STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Rodgers v. Banks,* 344 F.3d 587, 595 (6th Cir. 2003). The moving party may satisfy this burden by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating an absence of evidence to support the nonmoving party's case. *Id.*

4

In evaluating a motion for summary judgment, the court views the facts in the light most favorable for the nonmoving party, and draws all reasonable inferences in favor of the nonmoving party. *Bible Believers v. Wayne Cty., Mich.*, 805 F.3d 228, 242 (6th Cir. 2015); *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003). The Court does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Rather, the Court determines whether sufficient evidence has been presented to make the issue of material fact a proper jury question. *Id.* The mere scintilla of evidence in support of the nonmoving party's position is insufficient to survive summary judgment; instead, there must be evidence of which the jury could reasonably find for the nonmoving party. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

### III. ANALYSIS

#### A. Tennessee Common Law Wrongful Discharge

The City argues that Hamric's common law wrongful discharge claim is barred by the Tennessee Government Tort Liability Act ("GTLA"), Tenn. Code Ann. § 29-20-101 *et seq*. (Doc. No. 21 ¶ 1; Doc. No. 22 at 8-9). In her Response, Hamric argues that the GTLA does not provide the City immunity for its negligent failure to prevent its employee from committing intentional torts. (Doc. No. 26 ¶¶ 1-2; Doc. No. 27 at 9-10).

The GTLA provides that governmental entities are immune from lawsuits for injuries resulting from the exercise of governmental duties, with certain exceptions. Tenn. Code Ann. § 29-20-201(a). One exception to governmental immunity is where the plaintiff's injury is proximately caused by "negligent acts or omissions" of any governmental employee acting within the scope of their employment. Tenn. Code Ann. § 29-20-205. As noted by Hamric, a governmental entity can be liable for its negligent failure to prevent its employees from committing

5

intentional torts that are not specifically enumerated in section 29–20–205(2). *See Limbaugh v. Coffee Med. Ctr.*, 59 S.W.3d 73, 84 (Tenn. 2001) ("[W]e hold that section 29–20–205 of the GTLA removes immunity for injuries proximately caused by the negligent act or omission of a governmental employee except when the injury arises out of only those specified torts enumerated in subsection (2).").

However, Hamric has not brought a claim of negligence against the City. (*See* Doc. No. 1). As such, the exception to sovereign immunity set forth in section 29–20–205 will not apply. *See Hughes v. Metro. Gov't of Nashville & Davidson Cty.*, 340 S.W.3d 352, 368–69 (Tenn. 2011) ("When, therefore, there has been no showing of negligence by the governmental entity in supervision of one of its employees acting within the scope of employment, the exception to sovereign immunity set forth in section 29–20–205 will not apply."); *Baines v. Wilson Cty.*, 86 S.W.3d 575, 579 (Tenn. Ct. App. 2002) ("under the GTLA, a governmental entity is immune from liability for the common law tort of retaliatory discharge"). Accordingly, the City is entitled to summary judgment on Hamric's common law wrongful termination claim.

## B. ADA and TDA Discriminatory Discharge Claims

Hamric claims the City discriminated against her by discharging her "because of her actual or perceived disability, her bi-polar and anxiety disorder, in violation of the ADA and the TDA." (Doc. No. 27 at 14). The ADA and the TDA both prohibit covered employers from discriminating against a "qualified individual on the basis of disability with regard to hiring, advancement, training, termination, and other terms, conditions and privileges of employment." 42 U.S.C. § 12112(a), Tenn. Code Ann. § 8–50–103(b). Because TDA claims are analyzed under the same principles as those utilized for the ADA, the Court will analyze these claims together. *Cardenas-Meade v. Pfizer, Inc.*, 510 F. App'x 367, 369 n.2 (6th Cir. 2013).

6

To establish a *prima facie* case of disability discrimination by circumstantial evidence, Hamric must show that (1) she is disabled; (2) she is otherwise qualified for the position with or without reasonable accommodation; (3) she suffered an adverse employment decision; (4) the City knew or had reason to know of her disability; and (5) she was replaced or her position remained open. *Whitfield v. Tennessee*, 639 F.3d 253, 259 (6th Cir. 2011). Under the ADA, the plaintiff's disability must be a "but for" cause of the adverse employment action. *Demyanovich v. Cadon Plating & Coatings, L.L.C.*, 747 F.3d 419, 433 (6th Cir. 2014). Thus, to make a successful ADA discrimination claim, Hamric must show that the City took an adverse action against her "on the basis of [her] disability." 42 U.S.C. § 12112(a). The Sixth Circuit has held that an employee cannot be subject to an adverse employment action based on her disability unless the individual decisionmaker responsible for the alleged adverse employment action has knowledge of that disability. *See Tennial v. United Parcel Serv., Inc.*, 840 F.3d 292, 306 (6th Cir. 2016) (citing *Nilles v. Givaudan Flavors Corp.*, 521 Fed.Appx. 364, 368 (6th Cir. 2013)).

The City argues that Hamric cannot establish a *prima facie* case because she cannot establish that she was a qualified individual with a disability, that she suffered an adverse employment action, or that the City's Human Resources Director, who was going to recommend her termination, had knowledge of her alleged disability at the time of her resignation. (Doc. No. 21). The City further argues that even if Hamric could establish a *prima facie* case, she cannot create a genuine issue of material fact that the City's legitimate, non-discriminatory reason – her positive drug test result, as verified by the medical review officer – was pretext for disability discrimination. (*See id.*).

In her Response, Hamric argues that she qualifies as an individual with a disability based on her anxiety and bi-polar diagnosis. (Doc. No. 26 ¶ 3). Hamric claims that she suffered an

7

adverse employment action based on her disability when the City's HR Director, Pamela Russell, forced her resignation based on her positive drug test result. (Doc. No. 1 ¶ 26; Doc. No. 27 at 9-12, 16). Additionally, Hamric argues that City knew about her disability through her supervisors and that the proffered reason for her forced resignation had no basis in fact and was insufficient to motivate the action. (Doc. No. 26 ¶¶ 3, 5).

Even assuming that Hamric was able to meet elements one, two, three, and five of a *prima facie* case, she fails to present proof that the individual decisionmaker responsible for her forced resignation – HR Director Russell – was aware of her disability at the time of her forced resignation. *See Tennial*, 840 F.3d at 306. Instead, Hamric argues that the City knew of her disability through her supervisors, and points to evidence that her direct supervisor, Pam Taylor, and Taylor's supervisor, Nate Williams, knew of her bipolar disorder and anxiety. (Doc. No. 29 ¶¶ 10-11, 60; Doc. No. 31 ¶ 3). Although Taylor and Williams were aware of Hamric's disability, there is no indication in the record that they were decisionmakers in Hamric's forced resignation or otherwise played a role in the termination process. And it is undisputed that neither Hamric, Taylor, nor Williams informed HR Director Russell or anyone else in the City's HR department of Hamric's bipolar disorder and anxiety. (*See* Doc. No. 29 ¶¶ 12, 58-60, 62; *see also* Doc. No. 26-2 at 52:19-24; 62:19-23; Doc. No. 26-3 at 11:7-14).

Even viewing the evidence in the light most favorable to Hamric and drawing all reasonable inferences in her favor, the Court finds that no reasonable jury could find that HR Director Russell or anyone else in the City's HR department knew or had reason to know of Hamric's bipolar disorder and anxiety at the time of her forced resignation. Therefore, the City is entitled to summary judgment on Hamric's ADA and TDA discriminatory discharge claims. *See Tennial*, 840 F.3d at 306.

### C. ADA Failure to Accommodate Claim

Hamric also claims that the City discriminated against her by failing to accommodate her bipolar disorder and anxiety. An employer's failure to provide a reasonable accommodation to a disabled employee constitutes discrimination under the ADA. 42 U.S.C. § 12112(b)(5)(A); *see also Fisher v. Nissan North America, Inc.*, 951 F.3d 409, 415 (6th Cir. 2020). The City argues that Hamric's failure to accommodate claim should be dismissed for failure to exhaust administrative remedies because her EEOC charge failed to include any mention of the City denying her a reasonable accommodation. (Doc. No. 21 ¶ 4; Doc. No. 22 at 22-23). Additionally, the City argues Hamric's claim fails on the merits because, *inter alia*, she did not request a reasonable accommodation. (Doc. No. 22 at 23-24).

Failure-to-accommodate claims are evaluated under "the direct evidence test," which does not require the court to draw any inferences to conclude the employee has proven the employer failed to accommodate. *Fisher*, 951 F.3d at 416-17; *Tchankpa v. Ascena Retail Group, Inc.*, 951 F.3d 805, 811 (6th Cir. 2020). The Sixth Circuit uses a multi-part test to evaluate these claims: the employee "bears the burden of establishing (1) that he is disabled, and (2) that he is 'otherwise qualified' for the position despite his or her disability: (a) without accommodation from the employer; (b) with an alleged 'essential' job requirement eliminated; or (c) with a proposed reasonable accommodation." *Fisher*, 951 F.3d at 417 (quoting *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 868 (6th Cir. 2007)); *Tchankpa*, 951 F.3d at 811-12. The employee must also show the requested accommodation is "reasonable." *Fisher*, 951 F.3d at 419; *Tchankpa*, 951 F.3d at 812 (citing *Walsh v. United Parcel Serv.*, 201 F.3d 718, 725–26 (6th Cir. 2000) ("The burden of establishing that the proposed accommodation is reasonable remains with the plaintiff, regardless of whether plaintiff has direct or indirect evidence in support of his or her ADA claim.")).

Requested accommodations are reasonable "only if they 'address a key obstacle preventing [the employee] from performing a necessary function of [her job.]'" *Tchankpa*, 951 F.3d at 812 (quoting *Jakubowski v. Christ Hosp., Inc.*, 627 F.3d 195, 202 (6th Cir. 2010)). The reasonableness of a proposed accommodation is a question of fact. *Fisher*, 951 F.3d at 419.

In the present case, Hamric asserts that her bi-polar disorder and anxiety required an accommodation allowing her to alleviate the symptoms of her condition with CBD supplements which contain legal amounts of THC. (Doc. No. 27 at 13). The accommodation that Hamric allegedly requested from the City for her disability was for the City to review its drug testing policy to address CBD usage. (Doc. No. 1 ¶ 53).

The Court need not address the City's exhaustion argument because, even assuming Hamric did exhaust her administrative remedies, she has failed to raise a genuine question of fact as to whether her requested accommodation was reasonable. *Fisher*, 951 F.3d at 419; *Tchankpa*, 951 F.3d at 812. While Hamric makes the general assertion that modifying a workplace policy is a reasonable accommodation when necessitated by an individual's disability-related limitations, absent undue hardship, (*see* Doc. No. 27 at 18-19), she does not point to any evidence in the record to show that her requested accommodation was necessary to "address a key obstacle preventing [her] from performing a necessary function of [her job.]" *Tchankpa*, 951 F.3d at 812. This is fatal to her claim. *See id*. Accordingly, the City is also entitled to summary judgment on Hamric's ADA failure to accommodate claim.

An appropriate order will enter.

                                                             _____
                                                             WILLIAM L. CAMPBELL, JR.
                                                             UNITED STATES DISTRICT JUDGE